THE METROPOLITAN LIFE INSURANCE COMPANY

*v.*

VOJTECH MORAVEC.

*Opinion filed February 21, 1905.*

1. INSURANCE—*when falsity of representation will avoid policy.* A statement in an application for life insurance that the applicant had never had heart disease is a material representation, the falsity of which will avoid the policy.

2. SAME—*falsity of representation is not dependent alone upon conditions existing at the time of application.* The falsity of a representation that an applicant for insurance had never had heart disease is to be determined from the evidence as to the condition of the applicant's health, not only at the time of, but before, the application.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

HOYNE, O'CONNOR & HOYNE, for appellant.

V. A. GERINGER, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is an appeal, under a certificate of importance, from a judgment of the Appellate Court for the First District affirming a judgment in the sum of $537, entered in the superior court of Cook county in an action of assumpsit brought by the appellee against the appellant company on a policy of insurance issued to one Josepa Moravec, wife of appellee, on January 29, 1900, which said policy provided for the payment of the sum of $500 to the appellee in the event of the death of said assured. The assured departed this life January 6, 1901. To the declaration the appellant company filed the general issue and a number of special pleas. The special pleas averred, among other things, that

the assured, before making her application, had heart disease and rheumatism and had been treated for those afflictions by a physician, and that the statement made before the application for the policy contained misrepresentations relative to the condition of her health and her freedom from any affection of the heart, etc., and that the company had been induced to issue the policy by said false statements and misrepresentations.

The form of the application for the insurance contained a number of printed statements of fact, followed by a blank space in which to write exceptions or explanations. Preceding those statements appeared, printed in heavy, prominent type, the following: "Wherever nothing is written in the following paragraphs it is agreed that the warranty is true, without exception." The application then contained the following: "To induce the said company to issue the said policy, and as consideration therefor, I warrant and agree, on behalf of myself and of any other person who shall have or claim interest in any policy issued under this application, as follows:" Then follow a number of statements, among which are the following: "(2) I have never had any of the following complaints or diseases: * * * Disease of heart, * * * rheumatism, * * * except; (3) I am now in sound health, I am not blind, deaf or dumb, nor have I any physical or mental defect or infirmity of any kind, except." It appeared from the proofs of death furnished by the appellee that within less than one year after the issuance of the policy the assured died from "organic heart disease."

The appellant company produced testimony in substance to the effect that the assured, on the 5th day of May, 1897,— two years and eight months before the policy was procured upon her life,—applied to one Dr. Weintraub for medical treatment. Dr. Weintraub testified that he treated her once or twice a week for six or eight weeks. He described the examinations of her person made by him, and testified that he diagnosed her case to be permanent organic heart dis-

ease; that he prescribed and furnished medicines to her for that disease but without any appreciable benefit, and finally reached the conclusion that she was beyond medical aid, and so told her, and re-paid to her all the money that she had paid him,—about $40,—and discharged her, with advice and directions as to the character of work she should avoid doing and as to the habits and course of life which would be most conducive to her health.

The appellant company asked the court to give the following instruction: "The court instructs you that if the evidence shows that the insured, at *or before* the making of the application for the policy sued on, had disease of the heart, the jury will find for the defendant." The court struck out the italicized words, "or before," and gave the instruction as thus modified.

The statement in the application that the assured had never had heart disease was a material representation, and if false would avoid the policy. (*Continental Life Ins. Co. v. Rogers,* 119 Ill. 474; 16 Am. & Eng. Ency. of Law,— 2d ed.—933.) The appellant company was entitled to have the jury so advised, and the instruction as asked should have been given. As modified and given, the jury were authorized to return a verdict for the plaintiff unless it appeared from the evidence that the assured had heart disease at the time of the making of the application. The knowledge or ignorance of the appellant company as to whether the assured had previously been afflicted with heart disease would have influenced its judgment as an underwriter in making or declining to make the contract of insurance. It was a fact material for the consideration of the company and the assured was required to disclose the truth with reference thereto. The company had the lawful right to accept her application and issue the policy on the basis that her statement that she had never been affected with disease of the heart was true. The truthfulness of the statement was a material element of the contract. If false, it constituted a good defense to the

suit on the policy; and it was not essential that in order to maintain that defense the company should also prove that the assured had heart disease at the time the application was signed.

It is urged the instruction should not have been given as asked for the reason there was no sufficient evidence that the assured had suffered with heart disease previous to the making of the application. Dr. Weintraub testified that the person whom he treated for heart disease told him her name was Josie Bilek, and the contention of the appellee is there was a want of sufficient evidence to show that Josie Bilek and the assured were the same person. The maiden name of the assured was Josie Bilek. She was unmarried in 1897, when the examination and treatment of Dr. Weintraub was given. Dr. Weintraub had his office in a building in Chicago called the "New Era" building. One Mary Peckhaus testified that she knew the assured previous to her marriage; that the maiden name of the assured was Josie Bilek; that the assured, previous to her marriage, told her that she had pains and was sick, and had received medical treatment from a doctor who had his office in the New Era building, and had paid the doctor some $40 in money and that she wanted to get the $40 back from the doctor. Anna Bilek testified that she was acquainted with the assured before and after her marriage, and that her maiden name was Josie Bilek. This proof plainly tended to show that the person whom Dr. Weintraub treated for heart disease was the assured, and furnished the requisite basis of evidence on which to found the instruction.

For the error indicated the judgment of the superior court and that of the Appellate Court are each reversed, and the cause will be remanded to the superior court for such other and further proceedings as to law and justice shall appertain.  *Reversed and remanded.*